IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DAVID T. RHODEN,

        Plaintiff,

vs.                                                                CASE NO. 1:11-cv-26-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a partially favorable final decision of the Commissioner of Social Security (the "Commissioner") regarding Plaintiff's application for a period of disability and disability insurance benefits finding Plaintiff disabled as of December 7, 2006 but not before that date. (Doc. 1.)  The Commissioner has answered (Doc. 12), and both parties have filed briefs outlining their respective positions.  (Docs. 19 and 20.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act") on November 13, 2000 alleging a disability onset date of November 3, 1999.  (R. 52-55.)  Plaintiff's applications were denied initially and upon reconsideration.  (R. 38-41.)  Plaintiff then filed a timely request for an administrative hearing and a hearing was held before Administrative Law Judge ("ALJ") Gerald F. Murray on January 13, 2003.  (R. 13.)  ALJ Murray issued a written decision dated

March 11, 2003 denying Plaintiff's application.  (R. 13-31.)  Plaintiff then appealed ALJ

Murray's decision to the Appeals Council, which denied Plaintiff's request for review on

January 28, 2005.  (R. 5-8.)

Plaintiff then filed a complaint on March 21, 2005 in this District seeking review of

the Commissioner's denial of his application. *See* Case No. 1:05-cv-56-MP-AK.  On

August 26, 2005 the Commissioner filed a motion to remand that case with directions

that an ALJ further evaluate Plaintiff's mental impairments and give proper

consideration to the opinions expressed by Plaintiff's treating physicians.  (1:05 cv-56-

MP-AK, Doc. 11.)  On October 7, 2005, this Court granted the motion to remand and

remanded that case to the Commissioner pursuant to Sentence Four of 42 U.S.C. §

405(g) to further evaluate Plaintiff's mental impairments and to give proper

consideration to the opinions expressed by Plaintiff's treating physicians.  (1:05-cv-56-

MP-AK, Doc. 13; R. 475-77.)  The Appeals Council remanded the case to an ALJ on

July 8, 2006 with directions for the ALJ to give further consideration to the opinion of

Plaintiff's treating psychiatrist, Dr. Philip K. Springer, and to evaluate Plaintiff's mental

impairments in accordance with the relevant regulations.  (R. 478-81.)

On January 29, 2007, ALJ Douglas Walker held a hearing and issued a decision

dated April 18, 2007 in which he determined Plaintiff was disabled as of June 7, 2006

but not prior to that date.  (R. 583-96.)  Plaintiff requested review of ALJ Walker's

decision by the Appeals Council.  (R. 605-09.)  On June 18, 2010, the Appeals Council

remanded this case to ALJ Walker with instructions to obtain updated evidence of

Plaintiff's impairments, give further consideration to Plaintiff's residual functional

capacity and obtain supplemental testimony from a vocational expert.  (R. 598-603.)

2

ALJ Walker conducted another administrative hearing on October 1, 2010 and issued a decision dated December 1, 2010 in which he determined Plaintiff was disabled as of December 7, 2006, but not prior to that date.  (R. 462-74.)  Plaintiff then filed his Complaint in this case on February 15, 2011.  (Doc. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

4

relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### A.  Personal Background

Plaintiff born on June 7, 1952 was 58 as of his October 1, 2010 administrative hearing.  (R. 1098-99.)  Plaintiff has prior work experience as an electrician, as a worker in a used car lot, as a farm equipment and supply salesman, and as a truck driver.  (R. 1101-05.)

#### B.  Evidence Considered By ALJ Walker

The Plaintiff concentrates his arguments on ALJ Walker's treatment of Plaintiff's

---

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

non-exertional impairments of pain and major depressive disorder at various steps of the sequential evaluation process. Accordingly, the Court will focus its discussion of the record evidence on the evidence relating to Plaintiff's pain and major depressive disorder.

On August 9, 2000, John C. Stevenson, M.D. conducted a neurological examination of Plaintiff. (R. 215-18). Plaintiff complained of pain and aching between his shoulder blades, with right hip pain radiating down his leg to the right ankle. (R. 215.) Dr. Stevenson noted that radiographic studies showed no evidence of spinal cord compression but did show a probable thoracic arachnoid cyst extending from T4-T5 to the top of T6. (R. 218.) Dr. Stevenson diagnosed Plaintiff with thoracic myofascial injury and a thoracic arachnoid cyst. (*Id.*) Dr. Stevenson recommended continued conservative treatment of Plaintiff's mid thoracic pain with Plaintiff's treating pain management specialist. (*Id.*).

On December 27, 2000, Dr. Stevenson also completed a Florida Department of Health form regarding Plaintiff's impairments. (R. 210.) In that form, Dr. Stevenson noted Plaintiff had no loss of motion or deformity of his major joints. (*Id.*). He also noted Plaintiff had no definite muscle spasm and reduced muscle strength (4/5) in his right knee and below his right knee. (*Id.*) Plaintiff's grip strength and fine dexterity were intact. (*Id.*) Dr. Stevenson also noted Plaintiff had an antalgic gait and he opined Plaintiff could not squat, walk on his toes, or walk on his heels. (*Id.*)

On May 9, 2002 Plaintiff made his first visit to Philip K. Springer, M.D., a psychiatrist in Gainesville, Florida. (R. 367-71.) Plaintiff's chief complaints were

7

chronic pain, which Plaintiff told Dr. Springer was psychologically disabling, and depression. (R. 369, 408.) The progress notes reflect that during the mental status exam, Plaintiff's level of psychological distress appeared mild, which was "evidenced by pain and tension." (R. 369.) Plaintiff was diagnosed with pain disorder, with the notation "predominantly medical (chronic)", and major depressive disorder, recurrent, unspecified. (R. 406-09.)

Plaintiff reported back to Dr. Springer on May 13, 2002 complaining of a sudden downturn in his mood, but Dr. Springer stated that his "view of David's mental health is higher than their [Plaintiff's] own view." (R. 403-05.)

On May 17, 2002, Plaintiff's mental health and contentment were noted as "fairly good" and Dr. Springer wrote in the progress note "David sees himself as mentally less healthy than I do." (R. 395-96.) On May 21, 2002, Plaintiff reported a "definite uplift in his attitude lately." (R. 393.) Dr. Springer again wrote in the progress note "David sees himself as mentally less healthy than I do" and "[m]entally, he appears to be doing quite a bit better." (R. 394.) On June 4, 2002, Plaintiff reported he "now feels as if things aren't all that bad." (R. 391.) In the progress note for that visit, Dr. Springer wrote "[o]verall, he seems to have improved a great deal since the previous session." (R. 392.)

On June 18, 2002, there "appear[ed] to be moderate improvement in David's mental health" and "a definite uplift in his attitude lately." (R. 387-88.) On July 10, 2002, Plaintiff reported feeling like he was not doing well, but Dr. Springer again wrote in the progress note "David sees himself as mentally less healthy than I do" and "[g]enerally, there is a moderate uplift in David's attitude." (R. 385-86.) On August 7,

8

2002 Plaintiff reported not feeling any different but Dr. Springer noted Plaintiff's "mental health appeared to be in reasonably good shape today." (R. 383-84.) On September 4, 2002, Plaintiff reported increasing arthritis in his hands and increased pain in his thoracic area, but the progress note from that visit reflected "[o]verall mental health shows a significant improvement." (R. 380-82.) On October 2, 2002, Plaintiff reported feeling slightly worse, but Dr. Springer noted "[o]verall mental health has improved significantly from prior reports." (R. 378-79.)

On October 30, 2002, Plaintiff reported not really feeling any differently, and Dr. Springer noted "[o]verall, mental heath is in a state of relative balance" and "David's overall mental health shows major improvement compared to previous reports." (R. 376-77.) On November 25, 2002, Plaintiff again reported feeling slightly worse, but Dr. Springer again noted "David's overall mental health shows major improvement compared to previous reports." (R. 374-75.) On December 19, 2002, Plaintiff reported feeling about the same as he had in the past, and Dr. Springer noted "[o]verall, mental heath is in a state of relative balance" and "David's overall mental health shows major improvement compared to previous reports." (R. 372-73.)

Dr. Springer filled out a form entitled "Mental Residual Functional Capacity Assessment" dated January 13, 2003. (R. 410-12.) The form asked Dr. Springer to put a checkmark next to a series of questions regarding Plaintiff's understanding and memory, concentration and persistence, social interactions and adaptations. (*Id.*) attendance and be punctual within customary tolerances. Dr. Springer checked a serious of boxes indicating that Plaintiff's inability to perform a number of mental tasks was marked. The form, however, does not explain the reasons for the limitations nor is

9

there any evidence in the record that diagnostic testing was performed to obtain the results.

Plaintiff was treated at Meridian Behavioral Healthcare, Inc. ("Meridian") in Gainesville, Florida from January 2005 through July 2010.[21]  (R. 524-79, 1005-95.)  In August 2005, Plaintiff was diagnosed with a major depressive disorder, which was recurrent and moderate, and his global assessment of functioning[22] ("GAF") was 45, while the progress note from that visit reflected Plaintiff had "improved minimally in the last 6 months."  (R. 570-71.)  In September 2005, ARNP Paula Stowell ranked Plaintiff's progress as a 4 on a scale of 1 (poor) through 10 (good).  (R. 552-53.)  On October 12 2005, Plaintiff reported feeling "a little better" and Plaintiff's progress was ranked as an 8 on the same scale.  (R. 550-51.)  During a visit on October 21, 2005, however, Plaintiff's speech was pressured but coherent, and he was assigned a progress score of 4 by Ms Stowell.  (R. 548-49.)  On November 22, 2005, Plaintiff reported feeling stable and Ms. Stowell assigned him a progress score of 8.  (R. 546-47.)

In January 2006, his diagnosis was again major depressive disorder, which was recurrent and moderate, and his GAF was 45.  (R. 568-69.)  In March 2006, Plaintiff was given a progress score of 6-7 and in April 2006 he was assigned a 3-4.  (R. 537-41.)  In May 2006, Plaintiff reported he was doing better and was having fewer bad

---

[21]  The majority of the progress notes in the record from Plaintiff's visits to Meridian are written in nearly indecipherable handwriting.  Accordingly, the Court will summarize those portions of the progress notes which are legible.

[22]  Global Assessment of Functioning, or GAF, is a measure of an individual's psychological, social and occupational functioning.  Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994).  Scores range from 0 to 100 and a score between 41 and 50 represents "serious" symptoms or any serious impairment in social occupational or school functioning; 51 to 60 represents moderate symptoms or moderate difficulties in social, occupational or school functioning.  Id. at 34.

days, and Ms. Stowell rated his progress as "Good." (R. 536-37.) The next month

Plaintiff reported improved moods and Ms. Stowell rated his progress score as a 9. (R.

534-35.) The progress notes from his visit on August 1, 2006 reflects Plaintiff

experienced improved and more stable moods and Plaintiff's progress was rated as an

8-9, while his GAF was 48. (R. 532-33, 1005-06.) On August 25, 2006 his progress

was rated as a 7-8. (R. 530-31.) In October 2006, his progress score was a 6-8, while

in December 2006 it was a 5-6. (R. 526-29.)

On January 11, 2007, Plaintiff was verbally agitated, but Ms. Stowell noted there

was no change in Plaintiff's condition and she assigned him a progress score of 8. (R.

524-25.) On February 8, 2007, Plaintiff was assigned a progress score of 6-7 and he

was assigned a progress score of 6-8 in March 2007. (R. 1092-1095.) He continued to

show good progress from April through December of 2007. (R. 1084-91.) Although the

time between his visits to Meridian increased between August 2008 and July 2010,

Plaintiff continued to show fair to good progress during this period as well. (R. 1060-

77.)

### C.   **Hearing Testimony**

Plaintiff testified at his October 1, 2010 administrative hearing. Plaintiff testified

he previously had worked as an electrician, in a used car lot, as a farm equipment and

supply salesman, and as a truck driver. (R. 1110-15.)

A Vocational Expert (VE") also testified at the October 1, 2010 administrative

hearing. The VE testified Plaintiff's past relevant work included: (i) assistant electrician,

which is a medium exertion level position; (ii) feed researching, also with a medium

exertion level; (iii) sales representative for farm and garden equipment and supplies,

which was a light exertional level position; (iv) tractor-trailer truck driver, a medium

exertional level position; (v) used car lot porter, medium exertional level; and (vi) parts

salvager, also a medium exertional level.  (R. 1112-15.)  ALJ Walker also posed several

hypothetical questions to the VE. The ALJ asked the VE to assume a hypothetical

individual with the Plaintiff's age, education and work experience who can generally lift

and carry ten pounds frequently and twenty pounds occasionally; sit for six hours and/or

stand for six hours in an eight hour workday; should avoid frequent descending of

stairs; should avoid pushing; no climbing or balancing; and occasional stooping,

crouching, kneeling and crawling.  (R. 1118.)  ALJ Walker then asked the VE whether

there were any unskilled occupations that such an individual could perform. The VE

responded that such an individual could perform the positions of parking lot attendant,

ticket seller, and ticket taker.  (R. 1119-20.)  The VE testified that each of these jobs is

low stress and non-production oriented, meaning there is little individual responsibility

or decision-making required in performing the job. The jobs only require the individual to

follow simple, one, two or three step instructions.  (R. 1120.)

ALJ Walker then further refined the occupational profile of the hypothetical

individual by posing a further hypothetical to the VE. The ALJ asked the VE to assume

an individual with the same characteristics as in the first hypothetical but to include the

additional condition that the individual has psychologically based symptoms affecting

his ability to concentrate upon complex or detailed tasks, although the individual would

still remain capable of understanding, remembering and carrying out simple job

instructions.  (R. 1120-21.) ALJ Walker then asked the VE if an individual with that

profile could still perform any of the positions the VE had previously identified, even with

this additional psychological restriction.  (*Id.*)  The VE testified that such an individual could still perform the ticket taker and parking lot attendant positions, even with this additional psychological limitation.  (R. 1121.)  The VE further testified there were significant numbers of both the ticket taker and parking lot attendant positions in Florida as well as in the national economy.  (*Id.*)

### D.    ALJ Walker's Findings

In his written decision dated December 1, 2010, ALJ Walker concluded that since the alleged onset date of November 3, 1999, Plaintiff had the severe impairments of "a pain disorder related to chronic interscapular thoracic myofascial pain; status-post surgical removal of an arachnoid cyst; and a major depressive disorder, recurrent, unspecified."  (R. 464.)  He further determined, as of the alleged disability onset date, Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings.  (R. 465.)  ALJ Walker further concluded Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b), who could lift and carry ten pounds frequently and twenty pounds occasionally; and can sit, stand and walk for six hour in an eight-hour workday.  However, the claimant must avoid frequent ascending and descending stairs, pushing and pulling motions with his lower extremities, and hazards in the workplace.  He is further limited to occasional balancing, stooping, crouching, kneeling, and crawling, but he is unable to perform any climbing.  Additionally, the claimant is limited to low-stress work, in a non-production oriented job, with one, two or three step instructions.  Also, due to his psychological-based symptoms, [he] is capable of understanding, remembering and carrying-out simple, routine and repetitive tasks.

(R. 466.)

ALJ Walker then determined Plaintiff had been unable to perform any of his past relevant work since the alleged disability onset date of November 3, 1999.  (R. 470.)  Because Plaintiff turned 55 years of age on December 7, 2006 the ALJ concluded that

Plaintiff's age category changed to an individual of advanced age. (R. 471.)

Accordingly, relying upon the Medical-Vocational Grids the ALJ concluded that an

individual with Plaintiff's advanced age category, education and work experience is

considered disabled because there are not jobs that exist in significant numbers in the

national economy that the Plaintiff could perform. The ALJ therefore found that Plaintiff

was disabled beginning on December 7, 2006.  However, for the time period prior to

December 7, 2006, (before Plaintiff's age category changed to advanced age) Plaintiff

was not disabled because there were jobs that existed in significant numbers in the

national economy Plaintiff could have performed.  (473.)

## IV.  DISCUSSION

Plaintiff argues the ALJ committed four errors in his written decision, all of which

revolve around Plaintiff's non-exertional impairments of pain and major depressive

disorder.  The Court will discuss each alleged error in detail below.

### A.  ALJ Walker's Consideration of Plaintiff's Pain Disorder and Depression In Combination

Plaintiff argues that ALJ Walker erred by failing to consider the severity of

Plaintiff's non-exertional impairments of pain disorder and major depressive disorder

impairments in combination.  In support of this alleged error, Plaintiff contends that "[a]

medical expert would have helped ALJ Walker fully and fairly develop the record."

(Doc. 19 at 14.)

Where a claimant alleges more than one impairment, the Commissioner has a

duty to consider the cumulative effects of the impairments in making the determination

14

as to whether the claimant is disabled.[23]  Under the law in the Eleventh Circuit this burden is met where the ALJ expressly states he has considered all of the medical evidence and concludes Plaintiff is not suffering from "an impairment, or a combination of impairments listed in Appendix 1, Subpart P."[24]  In the instant case ALJ Walker did just that.  ALJ Walker expressly concluded that: "The [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 465.)  Moreover, in determining whether the Plaintiff met a listing at Step Three of the sequential evaluation process ALJ Walker expressly stated that "Despite the claimant's combined impairments ...," Plaintiff's medical evidence did not meet any listing level impairment. (*Id.*)  ALJ Walker also carefully reviewed the requirements for each mental impairment included in the Listings and concluded Plaintiff's mental impairments did not meet the requirements of any of those Listings.  (R. 465-66.)

Moreover, in discussing the medical evidence as part of the evaluation of Plaintiff's RFC, ALJ Walker expressly advised that he had given "careful consideration of the entire record" including consideration of "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  (R. 466.) This language evidences that ALJ Walker properly considered Plaintiff's impairments in combination as part of the sequential evaluation process.

The Court, therefore, concludes that ALJ Walker properly considered and

---

[23] Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).

[24] Id.

discussed in his written decision all of Plaintiff's impairments in combination, including Plaintiff's depressive disorder and pain disorder.

### B.   ALJ Walker's Application of the Treating Physician Rule to the Opinions of Plaintiff's Treating Physicians

Plaintiff also contends ALJ Walker erred in addressing the medical opinions expressed by Plaintiff's treating physicians Drs. Springer and Stevenson as it relates to Plaintiff's pain and depression.  This contention has no merit.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[25]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[26]

The ALJ may discount a treating physician's opinion or report regarding an inability to  work if it is unsupported by objective medical evidence or is wholly conclusory.[27]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and

---

[25] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[26] 20 C.F.R. § 404.1527(d)(2).

[27] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

other consistent evidence of a claimant's impairments.[28]

The Court will consider in turn ALJ Walker's handling of the opinions of Dr. Philip Springer and Dr. John Stevenson.

### 1.     Dr. Springer's Opinion

Plaintiff contends ALJ Walker erred in his treatment of the opinions expressed by Dr. Springer in the Mental Residual Functional Capacity Assessment Form (the "mental RFC form").

In this case, ALJ Walker specifically noted the following with respect to Dr. Springer's opinion as expressed in the mental RFC form:

> Similarly, the undersigned gives little weight to the Mental Residual Functional Capacity Assessment, completed by Dr. Phillip K. Springer (Ex. 17F/CR410), because beyond the check marks placed on a form devised by the representative, it is not supported by any adequate explanations and/or any objective clinical signs, diagnostic studies or laboratory findings.  Furthermore, Dr. Springer's restrictions are so extreme as to require an explanation; yet, he utterly failed to provide any reasoning. Therefore, while the undersigned assigns some weight to the notes from the claimant's evaluations (Ex. 14F), substantial weight is not accorded to the checklist.

(R. 470.)

ALJ Walker did not err in his treatment of Dr. Springer's conclusions expressed on the mental RFC form. ALJ Walker specifically noted that he gave little weight to the conclusions expressed on the form because the findings were simply checks on a form that were not supported by adequate explanation, objective clinical signs, diagnostic studies or laboratory findings.  An ALJ may determine that the opinion of a treating

---

[28] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

physician expressed on a "check-off" form should be given less than controlling weight where the opinion is conclusory and not supported by explanations in the progress notes or not supported by objective clinical signs or any diagnostic tests. Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011)("Given that the 'check-off form' did not cite any clinical test results or findings and Dr. Lowder's previous treatment notes did not report any significant limitations due to back pain, the ALJ found that the MSS was entitled to 'little evidentiary weight.'"); Dixon v. Astrue, No. 5:09-cv-320-RS-EMT, 2010 WL 4942141, at *14-*15 (N.D. Fla. Oct. 26. 2010)(ALJ properly rejected opinions expressed by treating physician on "check-off" type forms where the treating physician's own treatment notes did not support the opinions expressed on those forms).

Furthermore, ALJ Walker's treatment of Dr. Springer's opinion as expressed in the mental RFC form was appropriate because the boxes checked by Dr. Springer on the form were substantially at odds with Dr. Springer's own progress notes.  Despite the severity of the limitations expressed on the mental RFC form, Dr. Springer noted in the progress notes for almost every one of Plaintiff's visits that Plaintiff was either showing progress or that Plaintiff "sees himself as mentally less healthy than I [Dr. Springer] do." (R. 372-405.)  Indeed, on Plaintiff's last visit to Dr. Springer on December 19, 2002, the progress notes reflect that Plaintiff's "[m]ental health is in a state of relative balance" and Plaintiff's "overall mental health shows major improvement compared to previous reports."  (R. 372-73.)  Accordingly, the Court concludes that ALJ Walker's rejection of Dr. Springer's opinion was completely consistent with Dr. Springer's own medical records.

ALJ Walker's treatment of the opinion expressed by Dr Springer in the mental

RFC form is also supported by other evidence in the record, specifically Plaintiff's records from his treatment at Meridian.  Plaintiff was diagnosed with a major depressive disorder, recurrent, moderate during his treatment at Meridian, but during the nearly five years he was treated at Meridian Plaintiff showed consistent progress for the most part.  His progress scores on a scale of 1 (poor) to 10 (good) during this period were consistently as high as an 8 or a 9.  (R. 530-31, 534-35, 546-47.)  ARNP Patricia Stowell remarked in the progress notes that Plaintiff's progress was "Good" or that Plaintiff self-reported doing better and having fewer bad days or else reported he experienced improved and more stable moods on multiple occasions.  (R. 532-33, 536-37, 1005-06.)  In addition, as ALJ Walker specifically noted, although Plaintiff presented to Meridian with a depressed mood and sad affect, his thought process was coherent and relevant, he displayed no suicidal or homicidal ideations and Plaintiff's insight and judgment were both fair on most of his visits to Meridian.  (R. 469-70.)  Accordingly, the Court concludes that ALJ Walker did not err in discounting the conclusions expressed by Dr. Springer in the mental RFC form.

### 2.    Dr. Stevenson's Opinion

Plaintiff also contends the ALJ ignored Dr. Stevenson's treating physician opinion.  This contention is somewhat confusing, as Plaintiff does not specifically state which of Dr. Stevenson's conclusions were not properly addressed by ALJ Walker.

Dr. Stevenson opined that Plaintiff could not squat, walk on his toes, or walk on his heels.  (R. 210.)  As part of his RFC determination, ALJ Walker specifically reviewed Dr. Stevenson's findings and concluded Plaintiff had the RFC to perform light work, except Plaintiff was to avoid frequent ascending and descending of stairs and pushing

and pulling with his lower extremities.  (R. 466, 468.) As ALJ Walker concluded this

RFC determination was "supported by the progress report notes from .... Dr. John

Stevenson."  (R. 470.)

Accordingly, because ALJ Walker specifically included a restriction in Plaintiff's

RFC that was consistent with the opinion of Dr. Stevenson there was no error.

### C.      ALJ Walker's Determination of Plaintiff's Mental RFC

Plaintiff also contends ALJ Walker failed to properly determine his mental

RFC.  This contention is also without merit.

ALJ Walker concluded Plaintiff had the RFC to:

perform light work as defined in 20 CFR 404.1567(b), who could lift and
carry ten pounds frequently and twenty pounds occasionally; and can sit,
stand and walk for six hour in an eight-hour workday.  However, the
claimant must avoid frequent ascending and descending stairs, pushing
and pulling motions with his lower extremities, and hazards in the
workplace.  He is further limited to occasional balancing, stooping,
crouching, kneeling, and crawling, but he is unable to perform any
climbing.

(R. 466.)

Notably,  ALJ Walker also determined Plaintiff was "limited to low-stress work, in

a non-production oriented job, with one, two or three step instructions." This limitation

was included "due to Plaintiff's psychological-based symptoms." The ALJ properly

accounted for these symptoms by noting that Plaintiff is "capable of understanding,

remembering and carrying-out simple, routine and repetitive tasks."  (R. 466.)

In determining Plaintiff's RFC, ALJ Walker summarized all of the relevant

medical evidence relating to Plaintiff's depression and pain disorder.  (R. 466-70.)  He

extensively reviewed Plaintiff's records from his treatment with Dr. Phillip Springer as

well as the records from Plaintiff's visits to Meridian.   (R. 469-70.)

ALJ Walker's conclusion with respect to Plaintiff's mental RFC was supported by substantial evidence in the record.  As previously discussed, while the progress notes from Plaintiff's visits to Dr. Springer reflect occasional self reported complaints by Plaintiff that he was feeling worse, the progress notes are littered with Dr. Springer's opinions that Plaintiff was experiencing improvement and that Plaintiff's mental health was better than Plaintiff believed it to be.

The progress notes from Meridian also support ALJ Walker's conclusion with respect to Plaintiff's mental RFC.  Plaintiff was diagnosed with a major depressive disorder, recurrent, moderate during his treatment at Meridian, but during the nearly five years he was treated at Meridian Plaintiff showed consistent progress for the most part.  His progress scores on a scale of 1 (poor) to 10 (good) during this period were consistently as high as an 8 or a 9.  (R. 530-31, 534-35, 546-47.)  ARNP Patricia Stowell remarked in the progress notes that Plaintiff's progress was "Good" or that Plaintiff self-reported doing better and having fewer bad days or else reported he experienced improved and more stable moods on multiple occasions.  (R. 532-33, 536-37, 1005-06.)  In addition, as ALJ Walker specifically discussed, while Plaintiff presented to Meridian with a depressed mood and sad affect, his thought process was coherent and relevant, he displayed no suicidal or homicidal ideations and Plaintiff's insight and judgment were both fair on most of his visits to Meridian.  (R. 469-70.)

In sum, ALJ Walker's finding of Plaintiff's mental RFC was supported by substantial medical evidence in the record, specifically the progress notes from Plaintiff's treatment with treating psychiatrist Dr. Philip Springer as well as Plaintiff's visits to Meridian Behavioral Healthcare.  Accordingly, the Court concludes that ALJ

Walker did not err in his evaluation of Plaintiff's mental RFC.

### D.    ALJ Walker's Hypothetical Question To The VE

Plaintiff also contends ALJ Walker erred in the hypothetical question he posed to the VE at Plaintiff's administrative hearing.  This fourth and final error is also without merit.

The ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments when presenting a hypothetical question to a VE.[29] The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC.  In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant, the question must set out all of the claimant's impairments.[30]  However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[31]

In this instance, ALJ Walker asked the VE to assume a hypothetical individual with the Plaintiff's age, education and work experience who can generally lift and carry ten pounds frequently and twenty pounds occasionally; sit for six hours and/or stand for six hours in an eight hour workday; should avoid frequent descending of stairs; no climbing or balancing; and occasional stooping, crouching, kneeling and crawling.  (R.

---

[29] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[30] Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

[31] Wright v. Comm'r of Soc. Sec., 327 Fed. Appx. 135, 137 (11th Cir. 2009).

1118.)  ALJ Walker then asked the VE whether there were any unskilled occupations that an individual could perform with these characteristics. The VE responded that such an individual could perform the positions of parking lot attendant, ticket seller, and ticket taker.  (R. 1119-20.)  The VE testified that each of these jobs is low stress, non-production oriented, meaning there is little individual responsibility or decision-making required in performing the job and the jobs only require simple one, two or three step instructions.  (R. 1120.)

ALJ Walker then further refined the occupational profile of the hypothetical individual by stating the hypothetical individual has psychologically based symptoms affecting his ability to concentrate upon complex or detailed tasks, but the individual would remain capable of understanding, remembering and carrying out simple job instructions.  (R. 1120-21.)  ALJ Walker then asked the VE if the hypothetical individual with this additional limitation would be able to perform any of the jobs the VE had just identified.  The VE testified the hypothetical individual could still perform the ticket taker and parking lot attendant positions, even with this additional psychological limitation. (R. 1121.)  The VE further testified there were significant numbers of both positions in Florida as well as in the national economy.  (*Id.*)

The limitations included by ALJ Walker in the hypothetical question to the VE were consistent with the Plaintiff's RFC as set forth in ALJ Walker's written decision. Plaintiff contends ALJ Walker should have included the limitations set forth in Dr. Springer's mental RFC form in the hypothetical question.  As discussed above the ALJ properly discounted these findings because they were not supported by Dr. Springer's own progress notes and were not supported by any testing or diagnostic findings.

Moreover, ALJ Walker did include a psychological restriction in the hypothetical question he posed to the VE. The ALJ expressly included in the second hypothetical the additional limitation of an individual who has psychologically based symptoms affecting his ability to concentrate upon complex or detailed tasks, although the individual would remain capable of understanding, remembering and carrying out simple job instructions.  (R. 1120-21.)   The VE testified that an individual with these additional psychological symptoms could still perform at least two of the jobs identified by the VE as existing in significant numbers in the national economy.

Accordingly, for these reasons, the Court concludes that there was no error by the ALJ in the hypothetical posed to the VE.

## V.  <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on February 14, 2012.

*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

<u>NOTICE TO THE PARTIES</u>

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**